**James TOL, Plaintiff,**

v.

**GENERAL TEAMSTERS UNION, LO-
CAL NO. 406; ABF Freight Systems,
Inc., a foreign corporation; and East
Texas Motor Freight Lines, Inc., a for-
eign corporation, Defendants.**

**No. G85–1085.**

United States District Court,
W.D. Michigan, S.D.

Feb. 26, 1987.

Dennis Kolenda, Perrin Rinders, Var-
num, Riddering, Schmidt, & Howlett,
Grand Rapids, Mich., for plaintiff.

Michael Fayette, Grand Rapids, Mich.,
for Teamsters Union.

Frederick Damm, Detroit Mich., for ABF
Freight Systems, Inc. and East Texas Mo-
tor Freight Lines, Inc.

## OPINION

ENSLEN, District Judge.

The Court held a hearing in this case on
defendants' various motions to dismiss
and/or for summary judgment on Novem-
ber 24, 1986. At such hearing the Court
rendered an oral opinion from the bench
granting defendants' motions. Since there
are only a few published opinions that dis-
cuss the central issue in this case, however,
the Court has decided to issue its bench
opinion in written form. The following
opinion thus is intended solely to memorial-
ize the oral opinion I rendered at the No-
vember 24th hearing, and has no effect on
the validity of the Order the Court issued
on November 25, 1986.

### Introduction

The plaintiff in this action is an employee
of defendant ABF Freight Systems, Inc.
He has filed suit against his employer, his
former employer, East Texas Motor
Freight Lines, Inc., and the unions that
represent him, claiming that another em-
ployee has been improperly given greater
seniority and that his unions have failed to
represent his interests effectively. All of
the defendants have filed motions to dis-
miss and/or for summary judgment. The
Court has received notice that plaintiff has
stipulated to the dismissal of defendants
the International Brotherhood of Team-
sters and the Central Conference of Team-
sters, and in fact entered an order to that
effect on November 5th. The Court thus
will consider only whether it also should
dismiss defendants Local No. 406, ABF
Freight Systems, Inc., and East Texas Mo-
tor Freight Lines, Inc. from this action.
For the reasons discussed below, I believe

that such defendants should be dismissed from this action.

## Facts

Plaintiff's tale, although in some respects confusing and subject to dispute, is essentially as follows. Plaintiff began working for defendant East Texas Motor Freight Lines in 1974 as a local or city driver. I note here that East Texas was taken over by defendant ABF Freight Systems, Inc. in 1982 and no longer exists as a separate entity. The Court thus will refer only to defendant ABF as the employer. Plaintiff was employed in defendant ABF's Grand Rapids terminal. At that time, defendant ABF and defendant Local 406 maintained separate seniority lists for local drivers and for what are referred to as over-the-road, or simply road, drivers. On or about October 30, 1979 defendant ABF requested a change of operation so that it could redomicile, or relocate, some of its over-the-road drivers. This change would result in the elimination of the Grand Rapids over-the-road terminal; local drivers, however, such as plaintiff would still work out of that terminal. Defendant brought its request before the Change of Operations Committee of the Central States Joint Area Council in December of 1979. The Change of Operations Committee is composed of representatives from both the employers and the unions. See National Master Freight Agreement, art. 8, sec. 6(a). One of Local 406's business agents, Dennis Dieters, represented the union before the Committee. At the hearing, Mr. Dieters informed the committee that Local 406 would not oppose ABF's request if ABF would agree that there was only one "master seniority list" for both local and over-the-road drivers. ABF agreed to this statement, and the Committee approved the change in operations. Plaintiff apparently alleges that Mr. Dieters did not put forth the seniority list issue as a proposed change from the status quo, but rather as a statement of fact to which he sought ABF's consent. Plaintiff argues that this statement was inaccurate because the Local had separate seniority lists for local and over-the-road drivers, and concludes that

this practice of having separate lists continued even after the December hearing before the Change of Operations Committee.

As I indicated above, one consequence of the change of operations was that the Grand Rapids over-the-road terminal was closed, and over-the-road drivers were moved to different terminals. Because of the "change" in the seniority structure, however, certain over-the-road drivers were able to transfer their seniority to the local list, and to bump some of the local drivers out of the Grand Rapids terminal. In particular, plaintiff alleges that a Michael Krese was allowed to bump onto the local seniority list even though he had been an over-the-road driver, and that Mr. Krese was given greater seniority than the plaintiff. As a result of this shift, plaintiff was bumped out of the Grand Rapids terminal, and given a choice of being laid off or transferred to Neelyville, Missouri as a road driver. Plaintiff alleges that Mr. Dieters made his statement concerning the seniority lists at the December hearing, and allowed Mr. Krese to bump onto the local seniority list, because Mr. Krese had supported several union officials in their re-election campaigns and the Union wanted to protect him from being laid-off or transferred.

Plaintiff complained to the Union about having to choose between being laid off and transferred to Missouri. He met with union and company officials informally on or about January 24, 1980, in an attempt to resolve his problems. The meeting was not successful, however, and plaintiff filed four grievances against the company on January 30th and January 31st. Plaintiff's first grievance concerned Mr. Krese's transfer to the local seniority list. His second concerned his option of being laid off or transferred to Neelyville. Plaintiff's third grievance concerned the fact that he had been given only until February 4th to transfer to Neelyville. His final grievance was a group grievance seeking a stay in the change of operations. Since the union and the company had already rejected plaintiff's claims at the local level, plaintiff immediately appealed his grievances to the

third stage of the procedure, which brought him before the Central States Joint Area Committee. The Joint Area Committee is composed of representatives from the employers and the union and is empowered, by a majority vote, to issue final and binding decisions on disputes brought before it. Central States Area Local Cartage Supplemental Agreement, art. 45(1)(a).

Plaintiff was represented before the Joint Area Committee by Mr. Dieters. It is unclear when the Committee considered plaintiff's grievance. Plaintiff alleges, however, that he never received any formal or written notice of the Committee's decision. Mr. Dieters, rather, informed plaintiff that the Committee had denied his grievances. Mr. Dieters further informed the plaintiff that the Union would not pursue his grievances any further. Plaintiff also believed at that time that Mr. Dieters had argued before the Committee that Local 406 had dual seniority lists, *i.e.*, one for local drivers and one for over-the-road drivers. Based on Mr. Dieter's representations that the Committee had denied his grievances, that the union would drop the grievances, and that the Joint Committee knew that the Local had dual seniority lists, plaintiff did not further grieve his layoff, which began on February 2, 1980. Plaintiff also alleges that he requested, but was denied, a transcript of the hearing before the Joint Committee.

On or about August 1, 1984 plaintiff was recalled from his layoff. Sometime thereafter, exactly when is not clear, plaintiff learned that the Local, specifically Mr. Dieters, had lied at the hearings before the Change of Operations Committee and before the Joint Area Committee concerning the Local's seniority system. Mr. Dieters had told both Committees that the Local followed a single master list, when in fact it maintained two lists. Plaintiff alleges that the Union had lied about the lists so that it could protect Mr. Krese when the Grand Rapids over-the-road terminal was closed by allowing him to bump onto the local seniority list. Plaintiff filed a grievance on December 7, 1984 requesting a rehearing of his 1980 grievances based on

the Union's fraud. He believed that the 1979 and 1982 collective bargaining agreements gave him the right to ask that his grievances be reheard. On January 7, 1985 Mr. Krese was placed at the head of the local seniority list. On January 14, 1985 plaintiff filed another grievance, this time challenging the placement of Mr. Krese at the top of the list. The Joint Area Committee denied plaintiff's grievances on May 1, 1985. Plaintiff filed his present complaint on October 31, 1985.

Plaintiff alleges in count I of his complaint that Local 406 committed numerous acts in violation of its duty to represent his interests fairly. He alleges in counts IV and V of the complaint that East Texas and ABF breached the collective bargaining agreements by allowing the union to transfer Mr. Krese to the local seniority list; denying plaintiff's 1980 grievances; acquiescing in the Union's statements regarding the seniority list at the December, 1979 Change of Operations Committee hearing; and attempting to redomicile plaintiff in Missouri. All of these allegedly wrongful acts by the company occurred, of course, in 1979 and 1980. Local 406 and ABF subsequently filed motions to dismiss, arguing that plaintiff's claims are barred by the statute of limitations.

## Discussion

This case requires the Court to apply the six-month statute of limitations the Supreme Court established for hybrid section 301/unfair representation cases in *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *see Smith v. General Motors Corp.,* 747 F.2d 372 (6th Cir.1984) (en banc). Whether plaintiff's claims are barred by this six-month statute of limitations depends on when they accrued, and the statute began to run. Plaintiff acknowledges that his claims stem from the actions defendants took in 1979 and 1980, when they allegedly violated his "contractual and fair representation rights." Brief in Response to Motions to Dismiss at 6. Although plaintiff's first amended complaint contains allegations that defendant

Local 406 has engaged in a continuing violation of its duty of fair representation, see ¶¶ 76 and 77, the Court agrees that his claims arise from the events that occurred in 1979 and 1980. See ¶¶ 85 and 86 of the First Amended Complaint. Since plaintiff's claims arose in 1979 and 1980, it would seem that they are long-since barred by the statute of limitations.

Plaintiff argues, however, that his complaint is timely because defendants, in particular defendant Local 406, fraudulently concealed their wrongful actions, and this fraudulent concealment tolled the statute of limitations. He further argues that he promptly filed new grievances when he learned of the true facts of the events that occurred in 1979 and 1980, and promptly filed suit when the Joint Committee failed to act favorably on his new grievances. Defendants respond that plaintiff has failed to plead this alleged fraudulent concealment with the particularity required by rule 9(b) of the Federal Rules of Civil Procedure; that in any event the concealment ceased in December, 1984 when plaintiff learned of the alleged fraud; and that plaintiff's action in filing new grievances did not continue to toll the running of the statute.

The Court believes that it is a close issue of whether plaintiff has adequately pleaded fraudulent concealment and thus established a case for tolling the statute of limitations. See *Sevako v. Anchor Motor Freight, Inc.,* 792 F.2d 570, 575–76 (6th Cir.1986); *Shapiro v. Cook United, Inc.,* 762 F.2d 49, 51 (6th Cir.1985); *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 393–94 (6th Cir.1975). I also believe that I do not have to decide this issue, however, because even assuming that defendants were guilty of some kind of fraudulent concealment, the concealment ended, and the statute started to run again, in December, 1984, yet plaintiff did not file his complaint until October 31, 1985, well after the six-month statute of limitations period had expired.

Plaintiff argues that the statute did not begin to run again until May 1, 1985, when the Joint Area Committee denied his new grievances. It is clear, however, that plaintiff's new grievances were merely requests that the Committee reconsider his 1980 grievances. As such, they are subject to the general rule that a request to reconsider a decision on a grievance does not toll the statute of limitations absent a specific contractual provision allowing the employee to request reconsideration of the decision. *E.g., Hull v. Local 414, International Brotherhood of Teamsters,* 601 F.Supp. 869, 872–73 (N.D.Ind.1985) (applying a Teamster's collective bargaining agreement); *Beckett v. Anchor Motor Freight,* 113 LRRM 2608, 2612 (N.D.Ohio 1982). As the Sixth Circuit noted in an unpublished opinion, a contrary rule "would place the statute of limitations entirely in the hands of the plaintiff and nullify the effect of a standard statute of limitations for all hybrid § 301/unfair representation cases." *Gersbacher v. Commercial Carriers, Inc.,* No. 84–1014, slip op. at 4 (6th Cir. June 17, 1985) [767 F.2d 920 (table)]. The record demonstrates that plaintiff knew at least by December, 1984 of the alleged fraudulent concealment, and possessed at that time all of the facts he needed to file a hybrid section 301/unfair representation action. He thus should have filed his action within six-months from that date. See *Dowty v. Pioneer Rural Electric Cooperative, Inc.,* 770 F.2d 52, 56–57 (6th Cir.1985). Plaintiff has not, moreover, pointed to any provision in the collective bargaining agreement that allows the Joint Committee to reconsider a grievance and thus would except his case from the rule stated above. *See also Sevako,* 792 F.2d at 576 (noting that even if appellants had established a claim of fraudulent concealment, they lost any benefit from the tolling of the limitations period when they did not file suit within six months after discovering the existence of the fraud).

Plaintiff may be able to establish that the statute of limitations should have been tolled because of fraudulent concealment until December, 1984. He has produced no reason, however, why the statute should have been tolled beyond that time. His October 31, 1985 complaint thus was not timely, and the Court must grant defend-

ants' motions to dismiss based on the statute of limitations.

The Court notes in closing that as the parties are aware, this case was scheduled for a hearing on October 31, 1986. The morning of the hearing, however, counsel for defendant Local No. 406 became ill and the hearing was cancelled, and subsequently rescheduled for this afternoon. The Court had, of course, prepared the above opinion before the October 31st hearing was suddenly cancelled. On November 19th, last Wednesday, plaintiff filed a Supplemental Brief in Opposition to Defendants' Motions for Dismissal. Plaintiff in essence argues two points in this brief. First, he argues that the statute of limitations was tolled against all of the defendants until December, 1984 because of the alleged fraudulent concealment I discussed above. Second, he argues that the statute was further tolled until May, 1985, when his new grievances were denied, because he had reasonably believed that filing such grievances was the proper step to take once he had learned about the fraud, and because the union had approved the filing of the grievances and had processed them. Plaintiff concludes that the union's failure to have objected to his new grievances, which had the effect of lulling him into not filing his lawsuit, sufficiently tolled the statute so as to make his complaint timely.

The Court initially debated whether it should even consider plaintiff's supplemental brief, given that it was filed nineteen days after the hearing on defendants' motions was to have occurred. I nevertheless decided to do so, and have concluded that it does not require me to change the result I announced previously. Plaintiff relies on a case from the Eastern District of Pennsylvania for his argument that defendants are in effect estopped from raising a statute of limitations defense because they accepted and processed his 1984 grievances. *Larry v. Penn Truck Aids, Inc.*, 94 F.R.D. 708 (E.D.Pa.1982). That decision does provide some support for plaintiff's argument. I have concluded, however, that the Sixth Circuit's unpublished decision in *Gersbacher* requires me to reject that argument. The plaintiff in *Gersbacher*, like the plain-

tiff here, requested a rehearing on his grievance after having consulted with union officials. Slip op. at 2. The joint arbitration panel, moreover, considered the grievance, but rejected it on the grounds that the employee's allegedly new evidence was not in fact new, but had been available to him at the first grievance hearing. The Sixth Circuit nevertheless rejected the plaintiff's claim that the statute of limitations did not begin to run until the panel had denied his second grievance. Slip op. at 3–4; *see also Hull*, 601 F.Supp. at 871–73 (indicating that plaintiff's complaint was untimely even though the Joint State Committee had considered his request to reopen his original grievance). The Court was unable to find any material distinctions between this case and *Gersbacher*.

The Court is aware that the Sixth Circuit discourages the use of unpublished opinions by district courts. See Sixth Circuit Rule 24(b). An unpublished decision does have precedential value, however, and the Court must assume that the Sixth Circuit will adhere to the principle stated in *Gersbacher* in the future. The Court accordingly will enter an order dismissing plaintiff's complaint.