Tony E. HELMS, Plaintiff,

v.

YELLOW FREIGHT SYSTEM, INC., et al., Defendants.

Civ. A. No. 88–2399–0.

United States District Court, D. Kansas.

Sept. 18, 1989.

Fred Spigarelli, Pamela G. Kohler, Pittsburg, Kan., for plaintiff.

David B. Mandelbaum, Ronald E. Sandhaus, Overland Park, Kan., for Yellow Freight System, Inc.

Gerald R. Bloomfield, Kool, Kool, Bloomfield & Hollis, Albuquerque, N.M., Robert L. Dameron, Blake & Uhlig, P.A., Kansas City, Kan., for Chauffeurs, Teamsters and Helpers Local No. 492.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

Plaintiff brought this claim against his employer and his union alleging that (1) his employer had discharged him in violation of the collective bargaining agreement; and (2) his union had failed to fulfill its duty of fair representation in processing his discharge grievance. Such claims are colloquially referred to as "hybrid § 301/fair representation actions" based on the applicability of § 301(a) of the Labor Management Relations Act, 29 U.S.C.S. § 185(a) (1982). Subsequently, both the employer and the union filed motions for summary judgment contending *inter alia* that plaintiff's action is barred by the applicable statute of limitations. Since we dispose of this case solely on statute of limitations grounds, we reach neither the additional issues raised in defendants' briefs nor those raised in plaintiff's cross motion for partial summary judgment.

### Facts

In 1987, plaintiff was an employee of defendant, Yellow Freight Systems, Inc., and a member of defendant, Chauffeurs, Teamsters and Helpers Local, No. 492. Because his duties required him to drive a vehicle, plaintiff was required to maintain a chauffeurs license and to take scheduled Department of Transportation physicals which included urinalysis.

The terms and conditions of plaintiff's employment were governed by a collective bargaining agreement, the National Master Freight Agreement, which incorporated certain uniform testing procedures (UTP) for determining drug abuse. Section I(D) of the UTP provided:

"[i]f the [Department of Transportation] or other regular physical examination test results of urine specimens by gas chromatography Mass Spectrometry confirm the initial immunochemical quantitation of thirty (30) or more nanograms cross-reactive cannabinoids/mL, the employee shall be subject to discharge."

On October 1, 1987, plaintiff underwent a regularly scheduled physical. On October 7, 1987, plaintiff was advised by his supervisor that, since the results of the urinalysis test indicated the presence of 54 nanograms of marijuana, he had tested positive

for marijuana use and was discharged from employment.

At the time of his discharge, grievance procedures were governed by the collective bargaining agreement, specifically Article 45 of the Western States Supplemental Agreement, which provided in part:

All disputes shall first be taken up between the Employer and Local Union involved. Failing adjustment by these parties, the following procedure shall apply:

(a) The dispute then may be filed by either party with an appropriate Joint State Committee. A majority vote of a Joint Committee shall be final and binding upon the parties to the dispute and the employee(s) involved and no appeal may be taken to the Joint Western Area Committee.

Plaintiff filed a grievance protesting his discharge on October 14, 1987, which was heard by the Joint State Committee on October 26, 1987. On that date, the Committee unanimously upheld the discharge and informed plaintiff of its decision.

Six weeks later, in December, 1987, plaintiff returned to his union office to obtain a copy of the minutes of his grievance hearing. While searching through the file, plaintiff discovered a document which he believed demonstrated that the results of his drug tests were insufficient to discharge him under the terms of the collective bargaining agreement.[1] Shortly thereafter, plaintiff contacted his union representative and requested that the union assist him in reopening his discharge grievance. Plaintiff's union representative reluctantly agreed and a second hearing was held before the Joint State Committee on March 29, 1988, at which time the Committee refused to reopen plaintiff's grievance on the basis that the October 26, 1987, decision was final and binding. Plaintiff filed the instant action on July 15, 1988.

## Discussion

■ Hybrid § 301/fair representation claims typically involve (1) a claim against the employer for breach of the collective bargaining agreement under § 301 of the Labor Management Relations Act, 29 U.S.C.S. § 185; and (2) a claim against the union for undermining the grievance and arbitration process by violating its duty of fair representation. See *Garcia v. Eidal Intern. Corp.*, 808 F.2d 717, 720 (10th Cir. 1986), *cert. denied*, 484 U.S. 827, 108 S.Ct. 94, 98 L.Ed.2d 55 (1987). Here, the plaintiff alleged (1) that his employer breached the collective bargaining agreement by discharging him on the basis of an insufficient drug test result and (2) that his union breached its duty to fairly represent him at his grievance hearing by failing to argue that the test results were insufficient.

Defendants contend that the action is time-barred under the applicable statute of limitations, which the parties agree is the six-month statute of limitations of § 10(b) of the National Labor Relations Act, 29 U.S.C.S. § 160(b), applied to hybrid § 301 claims by the Supreme Court in *DelCostel-*

---

1. The document discovered by plaintiff was the "Long Form" drug test report which stated that the initial test report of 57 nanograms of cannabinoids had been confirmed by a second test reporting 23 nanograms of carboxy-THC. Under the Uniform Testing Procedure (UTP), a two-step procedures was performed to detect the presence of marijuana. First, enzyme multiplied immunoassay testing (EMIT) is conducted to determine the presence (or absence of) of total immunochemically cross-reactive cannabinoids. If the EMIT test result show *less than* 30 nanograms of immunochemically cross-reactive cannabinoids/mL urine, the results by definition are negative. However, if 30 or more nanograms of immunochemically cross-reactive cannabinoids/mL urine are detected, an additional test, a gas chromatography/mass spectrometry (GC/MS) analysis is performed.

In plaintiff's case, the EMIT test reported 57 nanograms of cannabinoids and the GC/MS test reported 23 nanograms of carboxy-THC. According to defendants' uncontroverted affidavits and exhibits, confirmation of a positive EMIT test would occur when the GC/MS test showed 10 or more nanograms of carboxy-THC, a known marijuana metabolite. (Defendant Yellow Freight's Motion for Summary Judgment, Cohn affidavit, p. 6; Appendix A). On the basis of these exhibits and our examination of the entire record, we note that, although our decision on the statute of limitations issue has precluded us from reaching the issue of the sufficiency of the tests to discharge the plaintiff, defendant's motion would likely have been granted on the merits.

*lo v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). While *DelCostello* settled the limitations period applicable to hybrid § 301 actions, the Supreme Court did not expressly address the issue of when such causes of action accrue. Defendants contend that plaintiff's action filed on July 15, 1988, is untimely under *DelCostello* because the action accrued on October 26, 1987, the date the Joint Committee upheld plaintiff's discharge. Plaintiff counters that his action accrued on March 29, 1988, when the Joint Committee denied his application to reopen his grievance.

Plaintiff correctly states that certain lower courts have held that hybrid § 301 causes of action accrue from the time a final decision on a grievance is made or from the time the employee discovers or in the exercise of due diligence should have discovered that no future action would be taken on his grievance. *See Richards v. Local 134, International Brotherhood of Electrical Workers,* 790 F.2d 633, 636 (7th Cir.1986); *Craft v. Auto, Petro. & A.I.E.U. Local 618,* 754 F.2d 800, 803 (8th Cir.1985). Plaintiff contends that, under this formulation, his cause of action accrued when the Joint Committee denied his application to reopen his grievance on March 29, 1988, since it was only then that he realized no further action would be taken.

■ We find this contention to be without merit and not supported by relevant case law. It is well settled that, absent a specific provision in a collective bargaining agreement authorizing an employee to reopen a grievance, efforts by an employee to do so neither toll the statute of limitations for bringing a hybrid § 301/fair represen-

tation claim nor cause it to run anew. *See Tol v. General Teamsters Union, Local No. 406,* 656 F.Supp. 300, 303 (W.D.Mich. 1987) (noting plaintiff could point to nothing in the collective bargaining agreement allowing him to file a request to reopen his grievance); *Hull v. Local 414 of Int'l Bhd. of Teamsters,* 601 F.Supp. 869, 872–73 (N.D.Ind.1985) (holding statute not tolled by plaintiff's request to reopen his grievance based on new evidence); *Branch v. American Freight System, Inc.,* 586 F.Supp. 184, 187 (W.D.Mo.1983) (statute not tolled by committee's reconsideration of plaintiff's grievance based on new evidence). *See also Gersbacher v. Commercial Carriers, Inc.,* No. 84–1014, slip. op. at 4 (6th Cir. June 17, 1985) [767 F.2d 920 (table) ].[2]

■ Courts which have considered the precise question presented here, have reasoned that where the clear terms of the collective bargaining agreement provide that a majority vote of the joint committee is final and binding, and where there is nothing in the agreement expressly authorizing the plaintiff to reopen his grievance on the ground of new evidence, allowing plaintiff's cause of action to accrue on the date the Joint Committee denies reconsideration would extend the permissible period for filing a hybrid § 301 suit indefinitely. *See e.g. Hull, supra,* 601 F.Supp. at 873, citing *Branch, supra,* 586 F.Supp. at 186.

We agree with this reasoning and decline to reach a contrary result. Doing so would clearly place the statute of limitations entirely under the control of the plaintiff, thereby nullifying the effect of a standard statute of limitations for all hybrid § 301

---

**2.** We note that other courts have held that these causes of action accrue when the plaintiff knows or in the exercise of reasonable diligence should have discovered the acts constituting the alleged violation. See *Arriaga–Zayas v. Int'l Ladies' Garment Workers,* 835 F.2d 11, 13 (1st Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2016, 100 L.Ed.2d 604 (1988); *Metz v. Tootsie Roll Industries,* 715 F.2d 299, 304 (7th Cir.1983), *cert. denied* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984); *see also McLinn v. Boeing,* 715 F.Supp. 1024, 1029 (D.Kan.1989), and cases cited therein. Under this formulation of the accrual rule, plaintiff's action would still be

time barred. Since plaintiff is required to know and honor the terms and conditions of the collective bargaining agreement, he could have reasonably discovered that the unanimous decision of the joint committee on October 27, 1987 was the last violation of which he would be allowed to complain. *Hull, supra,* 601 F.Supp. at 873 (citations omitted). Even if we were to use December, 1987, (the date plaintiff discovered the document he believed supported his claim), as the date of accrual, plaintiff's claim would have been untimely under the six-month rule, since it was not filed until July 15, 1988.

claims and undermining the federal policy favoring uniformity and the quick resolution of labor disputes. *See DelCostello, supra,* 462 U.S. at 166–69, 103 S.Ct. at 2291–93; *Gersbacher, supra.*

Thus, we find that where the collective bargaining agreement provides no avenue for the rehearing of grievances, pursuit of a remedy outside the agreement's express provisions will not affect the running of the statute of limitations. Accordingly, because plaintiff's cause of action accrued more than six months prior to the date of filing, the court finds plaintiff's cause of action to have been untimely filed.

IT IS THEREFORE ORDERED that defendants' motions for summary judgment are granted.