McCLUSKEY v WOMACK

Docket No. 117209. Submitted June 19, 1990, at Lansing. Decided
    April 15, 1991, at 9:35 A.M.

    Martin McCluskey and others brought an action in the Macomb
        Circuit Court against P. Douglas Womack, Jr., alleging legal
        malpractice and breach of contract arising from the defendant's
        performance of legal services with respect to a federal court
        action brought by the plaintiffs against their employer and
        their union. The court, Frederick D. Balkwill, J., granted
        partial summary disposition for the defendant, dismissing the
        legal malpractice claim after finding that the applicable period
        of limitation had expired before the plaintiffs hired the defen-
        dant to represent them. The plaintiffs sought leave to appeal,
        alleging that the period of limitation was tolled while the
        plaintiffs pursued intraunion avenues for redress of their griev-
        ance. The Court of Appeals, Hood, P.J., and Maher and
        Gribbs, JJ., in lieu of granting leave to appeal, agreed and
        reversed in an unpublished order, dated July 21, 1988 (Docket
        No. 106369). The Supreme Court, in lieu of granting leave to
        appeal, vacated the judgment of the Court of Appeals and
        remanded the matter to the Court of Appeals for plenary
        consideration as on leave granted. 432 Mich 895 (1989).

        The Court of Appeals *held:*

        The trial court correctly granted summary disposition for the
    defendant with regard to the legal malpractice claim.

        1. The applicable six-month period of limitation ran from the
    time a final decision regarding the plaintiffs' grievance was
    made or the plaintiffs discovered, or in the exercise of reason-
    able care should have discovered, that no further action would
    be taken on their grievance, even though some possibility of
    nonjudicial enforcement remained. Because the plaintiffs' rep-
    resentative was informed that the union would not pursue
    their grievance further more than six months before the defen-

REFERENCES

Am Jur 2d, Attorneys at Law §§ 118 *et seq.*, 197 *et seq.*; Labor and
    Labor Relations §§ 475 *et seq.*

See the Index to Annotations under Attorney or Assistance of
    Attorney; Labor and Employment; Limitation of Actions.

dant was retained by the plaintiffs to file the federal court action regarding the grievance, the plaintiffs cannot prove that their alleged damages were caused by the defendant, and their legal malpractice claim must fail.

2. The running of the period of limitation was not tolled by the plaintiffs' pursuit of nonmandatory internal remedies through their union and the union president.

3. The plaintiffs did not allege fraudulent concealment by the union; therefore, their attempt to toll the statute of limitations on that ground must fail.

Affirmed and remanded.

1. LABOR RELATIONS — LIMITATION OF ACTIONS.

Union members' requests to their union to reconsider decisions involving grievances or for intervention by the union president generally do not toll the statute of limitations applicable to the grievance in the absence of a specific contractual provision allowing such requests.

2. ATTORNEY AND CLIENT — MALPRACTICE — BURDEN OF PROOF.

The plaintiff in a legal malpractice action bears the burden of proving the existence of an attorney-client relationship, negligence on the part of the attorney, that that negligence proximately caused damage, and the fact and extent of the damage alleged.

*Chirco, Herrinton, Runstadler & Thomas* (by *Robert W. Morgan*), and *Hooper, Hathaway, Price, Beuche & Wallace* (by *Bruce T. Wallace*), for the plaintiffs.

*Miller, Canfield, Paddock & Stone* (by *Allyn D. Kantor, Richard J. Seryak,* and *Ellen M. Tickner*), for the defendant.

Before: GRIFFIN, P.J., and SHEPHERD and DOCTOROFF, JJ.

SHEPHERD, J. In this legal malpractice action, plaintiffs appeal the lower court's granting of summary disposition for defendant regarding count I of plaintiffs' complaint, which alleged professional negligence. Summary disposition with regard to

this count was premised on the court's finding that the period of limitation applicable to the underlying claim for which defendant was retained had expired before plaintiffs hired defendant to represent them. We affirm.

Plaintiffs were, until January 1981, employees of Nu-Car Driveaway, Inc., which hauled and stored new cars manufactured by Chrysler Corporation. Plaintiffs were also members of Teamsters Local 299. When Nu-Car ceased operations, it was taken over by a subsidiary of Ryder Truck, RMX, Inc. Plaintiffs and other former Nu-Car employees later filed a grievance with Local 299, seeking, among other things, that the seniority lists of RMX be merged with those of other Ryder subsidiaries. Local 299 appointed Stanley Baker as plaintiffs' business agent to pursue the grievance and Anthony Rizzo, a grievant but not a party to this action, was appointed informally by the group as its spokesperson/representative.

The grievance was arbitrated on May 20, 1981, by the Teamsters Central-Southern Conference Joint Arbitration Committee, which denied plaintiffs' request that the seniority lists be merged for layoff and recall purposes. On July 7, 1981, Rizzo gave Baker a request for rehearing of the grievance before the joint arbitration committee, citing "new evidence," as well as a request for a hearing before the National Joint Arbitration Committee to have the latter interpret the collective bargaining agreement. The request for rehearing was denied in September 1981. On November 11, 1981, Baker informed Rizzo that the local would not pursue the request for a hearing before the National Joint Arbitration Committee.

Rizzo then sent a letter, on November 13, 1981, to International Brotherhood of Teamsters General President Roy Williams, enclosing a copy of

the grievance and requesting Williams' intervention in the matter. Having not received a response, Rizzo forwarded a second letter, again requesting Williams' intervention, on November 28, 1982. No response was given to the second letter either.

In the interim, in May 1982, plaintiffs met with defendant to discuss hiring defendant to investigate the possibility of suing plaintiffs' employer and union. Defendant was formally retained on July 13, 1982, to represent plaintiffs. On February 7, 1985, defendant filed a complaint in federal court on plaintiffs' behalf which set forth what is commonly referred to as a "hybrid § 301" claim. Such actions typically involve a claim against an employer for violation of a collective bargaining agreement under § 301 of the Labor-Management Relations Act, 29 USC 185, and a claim against a union for breach of its duty of fair representation, which is implied under the National Labor Relations Act, 29 USC 151 *et seq.* That action was dismissed by stipulation and order in April 1985 after the defendants filed motions to dismiss on the basis of the expiration of the period of limitation.

Plaintiffs commenced the present legal malpractice and breach of contract action against defendant in January 1986. Count i of their complaint, entitled "Legal Malpractice," alleged that defendant failed to competently handle plaintiffs' case by not filing the complaint within the applicable limitations period; that defendant failed to consult with plaintiffs in regard to the "strategy, compromise and settlement of the case," in contravention of the parties' fee agreement; and that defendant failed to "truthfully advise and honestly inform plaintiffs" of the status of their case. With respect to damages, plaintiffs averred that, as a result of defendant's conduct, "plaintiffs' lawful and merito-

rious claims against their union and employer were and are forever foreclosed with the resultant loss of continued employment and backpay awards." In count II, plaintiffs set forth a breach of contract claim, seeking recovery of the $2,000 retainer they paid defendant. That claim is not at issue here.

Summary disposition was granted to defendant pursuant to MCR 2.116(C)(10). A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence available to it and grant summary disposition if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A party opposing a motion brought under rule (C)(10) may not rest upon the mere allegations or denials in the party's pleadings, but must, by affidavit, deposition, admission, or other documentary evidence, set forth specific facts showing that there is a genuine issue for trial. MCR 2.116(G)(4). See *Panich v Iron Wood Products Corp,* 179 Mich App 136, 139; 445 NW2d 795 (1989).

As noted previously, plaintiffs' underlying cause of action was a hybrid § 301 claim. There is no dispute here that the applicable period of limitation is six months. See *DelCostello v Int'l Brotherhood of Teamsters,* 462 US 151; 103 S Ct 2281; 76 L Ed 2d 476 (1983). The six-month limitation period begins to run from the time a final decision regarding the employees' grievance has been made or from the time the employees discovered, or in the exercise of reasonable care should have discovered, that no further action would be taken with respect to their grievance. *Adams v Budd Co,* 846 F2d 428, 431 (CA 7, 1988), cert den 488 US 1008 (1989). This is so "even if some possibility of nonju-

dicial enforcement remain[s]." *McCreedy v Local Union No 971, UAW,* 809 F2d 1232, 1236 (CA 6, 1987), reh den 818 F2d 6 (1987), quoting *Rose v General Motors Corp,* 573 F Supp 747, 752 (SD Ohio, 1983).

Plaintiffs contend, as they did below, that although a six-month period of limitation applies, the limitation period was tolled in this case (1) by virtue of Rizzo's letters to the international union president, in that these amounted to good-faith efforts to resolve the dispute internally and the union constitution vested the president with authority to intervene, or (2) by their local's alleged fraudulent conduct in handling the grievance. We agree with the trial court that neither ground tolled the running of the limitation period. Plaintiffs' underlying cause of action accrued, at the latest, on November 11, 1982, when Rizzo was informed the local would not pursue the grievance further. Consequently, the six-month period of limitation expired in May 1982, before defendant was retained by plaintiffs to file the hybrid § 301 claim on their behalf.

First, art 7, § 6 of plaintiffs' collective bargaining agreement provided that decisions of arbitration committees, including local arbitration committees and joint conference arbitration committees, are final and binding on all parties, including the employees involved. Article XIX, § 12(C) of the Teamsters' constitution further provided that in the case of collective bargaining matters, as here, there shall be no appeal from decisions of the joint council. Thus, neither the collective bargaining agreement nor the Teamsters' constitution provided for, as an internal remedy that must be exhausted before filing an action in court, the seeking of the intervention of the international president. Indeed, under art XIX, § 10 of the

Teamsters' constitution, intervention by the president is limited to situations where charges involving members, officers, local unions, etc., "create, involve or relate to a situation imminently dangerous to the welfare of a Local Union, Joint Council, other subordinate body or the International Union." More importantly, the assumption of jurisdiction by the president is discretionary.

Rizzo's letters to President Williams were merely requests that the latter intervene. If, as is the general rule, requests to reconsider decisions involving grievances do not toll the statute of limitations absent a specific contractual provision allowing the employee to make such requests, *Helms v Yellow Freight System, Inc,* 721 F Supp 277 (Kan, 1989); *Tol v General Teamsters Union, Local No 406,* 656 F Supp 300, 303 (WD Mich, 1987); *Hull v Local 414, Int'l Brotherhood of Teamsters,* 601 F Supp 869, 872-873 (ND Ind, 1985), it follows that requests to a union president to intervene in the absence of a specific contractual provision allowing them likewise do not toll the statute of limitations. A contrary rule would place the limitation period entirely under the control of the plaintiffs, thereby nullifying the effect of a standard statute of limitations for all hybrid § 301 claims and undermining federal policy favoring uniformity and quick resolution of labor disputes. See *DelCostello, supra,* 166-169; *Helms, supra.*

Even assuming that a limited "appeal" may be taken from a grievance decision or that a grievance may be reopened because of new evidence, where, as here, the clear terms of the collective bargaining agreement provide that a majority vote of the joint committee is final and binding and there is nothing in the collective bargaining agreement expressly authorizing the employee to pursue an additional internal remedy, the pursuit of a

nonmandatory remedy will not serve to toll the limitation period. By November 11, 1981, plaintiffs had exhausted all their contractual remedies and knew, via Mr. Rizzo, that the union would take no further steps to pursue their grievance. Their § 301 claim accrued then, and the six-month period of limitation began to run. To find otherwise would be to extend the limitation period indefinitely, contrary to express public policy. Summary disposition was properly granted to defendant inasmuch as the letters to President Williams did not toll the limitation period, which expired before the retention of defendant.

Plaintiffs' attempt to toll the statute of limitations on the basis of their union's alleged fraudulent conduct is equally unavailing. Under the Michigan fraudulent-concealment statute, MCL 600.5855; MSA 27A.5855, there must be concealment by the defendant of the existence of a claim or the identity of a potential defendant. *Kikos v Int'l Brotherhood of Teamsters,* 526 F Supp 110 (ED Mich, 1981); *Eschenbacher v Hier,* 363 Mich 676, 681-682; 110 NW2d 731 (1961). Plaintiffs did not allege fraudulent concealment of their claim, but, rather, "fraudulent and deceitful conduct" on the part of the union solely with respect to its representation of plaintiffs in the grievance process. Such allegations do not assert "employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action," as fraudulent concealment was defined in *De Haan v Winter,* 258 Mich 293, 296; 241 NW 923 (1932), but amount only to the type of conduct plaintiffs would have been required to prove in establishing their underlying hybrid § 301 claim against their union. Moreover, Rizzo, plaintiffs' representative, testified at his deposition that he knew on Novem-

ber 11, 1981, that the union would not pursue the grievance further. He therefore knew or should have known at that point of the existence of the cause of action, and the fraudulent-concealment statute, by its terms, is inapplicable. *Kikos, supra; Eschenbacher, supra.* The trial court therefore correctly found that the limitation period was not tolled under this theory.

Plaintiffs also argue that the trial court erred in dismissing count i of their complaint in its entirety because not all of plaintiffs' claims in that count were affected by the viability of the underlying hybrid § 301 action. We disagree.

In a legal malpractice action, the plaintiff bears the burden of proving the existence of an attorney-client relationship, negligence on the part of the attorney, that that negligence proximately caused damage, and the fact and extent of the damage alleged. *Adell v Sommers, Schwartz, Silver & Schwartz, PC,* 170 Mich App 196, 204; 428 NW2d 26 (1988). Plaintiffs alleged in their complaint that, while defendant was retained on July 13, 1982, he did not draft a complaint until August 1983 and then did not file it until February 1985, well beyond the limitation period. They further alleged that defendant stipulated to the dismissal of the hybrid § 301 action without their consent, failed or refused to keep them apprised of the status of their case, and misled them with regard to the status. Paragraph sixteen of the complaint alleged that as a direct and proximate result of defendant's conduct, plaintiffs' claims against their union and employer were "forever foreclosed with the resultant loss of continued employment and backpay awards in excess of $10,000."

As discussed above, however, plaintiffs did not retain defendant until after the limitation period applicable to their underlying claim had expired.

Thus, regardless of what specific acts or omissions were alleged and how egregious they may appear to plaintiffs, their legal malpractice claim must fail, because they cannot prove their alleged damages were caused by defendant. The trial court therefore correctly granted summary disposition for defendant with regard to count I plaintiffs' complaint in its entirety. We again note, however, that plaintiffs' breach of contract claim is still viable, by which they may seek to recover the amount they paid to defendant as a retainer.

Affirmed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.