*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JUSTIN PEARSON SMITH, JACK P. SMITH, and
J-STORM VENTURES, LLC,

    Plaintiffs-Appellants,

v

G. THOMAS WILLIAMS and MCGARRY BAIR,
PC,

    Defendants-Appellees.

UNPUBLISHED
October 15, 2024
9:48 AM

No. 365367
Kent Circuit Court
LC No. 18-010150-NM

Before: GADOLA, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

In this legal malpractice action, plaintiffs, Justin Pearson Smith (hereinafter: Justin), Jack P. Smith (hereinafter: Jack), and J-Storm Ventures, LLC, appeal by right the trial court's order granting summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact) in favor of defendants, G. Thomas Williams and McGarry Bair, P.C. On appeal, plaintiffs assert that the trial court erred by concluding that plaintiff Jack did not have an implied attorney-client relationship with defendants, that defendants' negligence was not the proximate cause of plaintiffs' damages, and that plaintiffs failed to present sufficient evidence to show a genuine issue of material fact concerning damages. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

This legal malpractice case arises from the failure of employees at law firm McGarry Bair to timely file a patent application. Justin, a swimming enthusiast, invented of a type of "swimming paddle," which is a training device for swimmers. Justin's father, Jack, financially supported Justin's endeavor and introduced Justin to attorney John McGarry, who was a patent attorney at McGarry Bair. McGarry eventually retired and patent attorney G. Thomas Williams, who was also employed at McGarry Bair, took over representing Justin. On November 15, 2016, an original

-1-

utility patent[1] for the swim paddle was successfully issued to Justin.  However, Justin also wanted to obtain a related divisional patent[2] with method claims that would allow customers to order customized swim paddles specifically built to the measurements of the customer's hand.  The deadline for filing the divisional application was November 14, 2016 (the day before the initial patent was issued), but the application was not filed in a timely manner.  Justin never obtained a divisional patent related to the swim paddle, and he also never marketed or sold his swim paddle.

Plaintiffs filed a legal malpractice claim against defendants, alleging that they suffered monetary damages as the result of defendants' failure to timely file the divisional patent application.  After conducting discovery, defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10).[3]  Defendants argued that all claims brought by Jack should be dismissed because there was never an attorney-client relationship with Jack; that Justin did not make an adequate showing of proximate cause because he failed to establish that the patent he sought would have been issued; and that Justin failed to make an adequate showing to establish damages because the evidence of potential lost profits was too speculative, unknown, and hypothetical.  The trial court agreed with each argument, granted defendants' motion for summary disposition, and dismissed all of plaintiffs' claims.

This appeal followed.

## II.  ANALYSIS

### A.  STANDARDS OF REVIEW AND GOVERNING LAW

This Court reviews a trial court's ruling on a motion for summary disposition de novo. *Auto Club Grp Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2001).  When reviewing a motion brought pursuant to MCR 2.116(C)(10), this Court "must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence in favor of the party opposing the motion." *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996).  This Court's "task is to review the record evidence, and all reasonable inferences drawn from it, and decide whether a genuine issue regarding any material fact exists to warrant a trial." *Id*.  A genuine issue of material fact exists when the record, "giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ."

---

[1] U.S. Patent No. 9,4942,7012.

[2] A divisional patent application contains subject-matter from a previously filed application, which is known as the parent application.  The claims in a divisional application concern a distinct or independent invention that are "carved out" from the patent application.  The United States Patent and Trademark Office, *Divisional Application*, <https://www.uspto.gov/web/offices/pac/mpep/s201.html#ch200_d1ff70_1e3be_230> (accessed August 26, 2024).

[3] Although the trial court's opinion purports to grant the motion under both MCR 2.116(C)(8) and (C)(10), the court considered evidence outside of the pleadings.  Therefore, it is more accurate to consider the motion as granted under MCR 2.116(C)(10).  See MCR 2.116(G)(2).

*Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 609; 566 NW2d 571 (1997) (quotation marks and citation omitted). However, the court may not "assess credibility" or "determine facts on a motion for summary" disposition. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

Plaintiffs' claims sound in legal malpractice. To establish a successful legal malpractice claim, a plaintiff must demonstrate the following elements: "(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was a proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995) (quotation marks and citation omitted).

## B. ATTORNEY-CLIENT RELATIONSHIP

First, plaintiffs argue that the trial court erred by concluding that Jack[4] did not have an attorney-client relationship with defendants. We disagree.

The first element of a claim for legal malpractice is the existence of an attorney-client relationship. An attorney-client relationship "may be implied from conduct of the parties." *Macomb Co Taxpayers Ass'n v L'anse Creuse Pub Sch*, 455 Mich 1, 11; 564 NW2d 457 (1997) (quotation marks and citation omitted). "The rendering of legal advice and legal services by the attorney and the client's reliance on that advice or those services is the benchmark of an attorney-client relationship." *Id*. "The attorney's right to be compensated for his advice and services arises from that relationship; it is not the definitional basis of that relationship." *Id*.

In this case, Jack had a relationship with both attorney McGarry and the law firm McGarry Bair both before and after the patent application process that is at issue in this appeal. Jack also introduced Justin to McGarry (and Williams took over after McGarry retired) and paid the legal invoices associated with Justin's attempt to obtain patents for his swim paddle. However, Jack did not request, receive, or rely upon legal advice concerning the patent process for the swim paddle, which is the basis of the legal malpractice claim in this case. Rather, Justin was developing the paddle. Justin communicated his ideas to McGarry via e-mail, and although Jack was copied on this e-mail, McGarry provided his opinion concerning patentability to Justin. In Jack's deposition, he described himself as an investor and stated that he only had limited involvement in the patent process for the swim paddle. Later, Justin and Williams discussed what actions to take after receiving the restriction requirement from the United States Patent and Trademark Office (USPTO). Although Justin believed that the method claims were more important, he followed Williams's advice and chose to submit the apparatus claims first and to proceed with the method claims in the divisional application second. There is no evidence that Jack participated in these discussions or influenced Justin's decision. Moreover, the patent was issued to Justin. Jack does not allege that he has any interest in the patents themselves. The patent agent testified that she sent the divisional application to Justin for his approval, and Justin responded. There is no

---

[4] Plaintiffs did not dispute defendants' contention that J-Storm Ventures did not have an attorney-client relationship with defendants during the lower court proceedings, and no arguments are raised on its behalf in this appeal.

-3-

evidence in the record that Jack was involved in the drafting of the divisional application. If the divisional application had been properly submitted, then it would have been submitted in Justin's name. Similarly, if the divisional application had been successful, it would have been issued to Justin.

Because Jack did not have an attorney-client relationship with defendants, Jack's legal malpractice claim fails. Therefore, the trial court properly granted summary disposition in favor of defendants as to Jack's claims.

## C. PROXIMATE CAUSE

Next, plaintiffs argue that the trial court erred by concluding that they failed to establish that defendants' malpractice was a proximate cause of their alleged damages. We disagree.

"Often the most troublesome element of a legal malpractice action is proximate cause." *Charles Reinhart Co v Winiemko*, 444 Mich 579, 586; 513 NW2d 773 (1994). "[T]o prove proximate cause a plaintiff in a legal malpractice action must establish that the defendant's action was a cause in fact of the claimed injury." *Id*. As a result, "a plaintiff must show that *but for* the attorney's alleged malpractice, he would have been successful in the underlying suit." *Id*. (quotation marks and citation omitted). Thus, "the client seeking recovery from his attorney is faced with the difficult task of proving two cases within a single proceeding." *Id*. (quotation marks and citations omitted). "To hold otherwise would permit a jury to find a defendant liable on the basis of speculation and conjecture." *Id*. at 586-587.

Nonetheless, "the 'suit within a suit' concept is not universally applicable . . . ." *Id*. at 587. The "suit within a suit" concept only applies in situations,

> such as where an attorney's negligence prevents the client from bringing a cause of action (such as where he allows the statute of limitations to run), where the attorney's failure to appear causes judgment to be entered against his client or where the attorney's negligence prevents an appeal from being perfected. [*Coleman v Gurwin*, 443 Mich 59, 64; 503 NW2d 435 (1993) (quotation marks and citation omitted).]

For example, this Court in *Basic Food Indus Inc v Grant*, 107 Mich App 685, 694; 310 NW2d 26 (1981),[5] explained that "[i]f the attorney's negligence results in a verdict against his client that is larger than what would have been returned in the absence of his negligence, then the attorney should be held liable for the increased amount of the judgment." See also *Lowman v Karp*, 190 Mich App 448, 452-453; 476 NW2d 428 (1991) (concluding that causation in a legal malpractice case could be established by showing that the attorney's negligence caused the plaintiff to settle a

---

[5] While decisions issued before November 1990 should be "considered to be precedent and entitled to significantly greater deference than are unpublished cases," this Court is not "strictly required to follow" such decisions. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (emphasis omitted).

case for less than it was worth). When the "suit within the suit" concept does not apply, "the attorney's liability, as in other negligence cases, is for all damages directly and proximately caused by attorney's negligence." *Basic Food Indus Inc*, 107 Mich App at 693.

A prior panel of this Court succinctly explained the causation rules in legal malpractice cases in an unpublished opinion:[6]

> [R]egardless of the various terms used for describing causation in legal-malpractice cases, the gravamen of the issues is always the same: did the attorney's negligence cause the client to receive a less favorable result than would have been achieved absent the negligence? If the negligence of an attorney caused a plaintiff to miss a filing deadline for an appeal or a lawsuit, the question of whether those now time-barred appeals or cases would have been successful are necessary to answer the pertinent question. If a party suffers a defeat in the underlying suit, and is ordered to pay a significant judgment, the pertinent question can be answered by deciding whether an attorney's negligence caused the judgment amount to be higher than it would have been otherwise. If a party settles a case, the pertinent question can be answered by determining whether a better settlement, or a better result during a trial, could have been obtained but for the attorney's negligence. Thus, . . . the primary issue in this appeal is similar to all negligence cases: whether defendants' alleged breach of their professional duty of care . . . resulted in plaintiff receiving a less favorable result than [he or] she would have otherwise. [*Rufo v Rickard*, unpublished per curiam opinion of the Court of Appeals, issued March 10, 2022 (Docket No. 356213), p 5 (citations omitted).]

Accordingly, to prevail, Justin must present evidence showing that the dispositional patent application would have been successful if defendants had filed it before the deadline.

Regarding motions made pursuant to MCR 2.116(C)(10), the moving party may satisfy its burden "by submitting affirmative evidence that negates an essential element of the nonmoving party's claim, *or* by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016) (quotation marks, citation, and alterations omitted). According to the Michigan Supreme Court,

> Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Id*. (quotation marks and citations omitted).]

---

[6] Unpublished opinions of this Court are not binding, but we find this one instructive. See *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

As a result, MCR 2.116(C)(10) "plainly requires the adverse party to set forth specific facts at the time of the motion showing a genuine issue for trial." *Id*. at 7-8 (quotation marks and citation omitted).

As evidence of the patentability of the method claims, plaintiffs submitted a 2012 e-mail authored by McGarry in which he stated his opinion that "the method of making the customized fins *appears* to be novel and *appears* to be patentable over the prior art references that we reviewed." (Emphasis added.) This e-mail was composed by McGarry four years before the divisional application was supposed to be filed and while optimistic, it did not guarantee that the method claims would be patentable. Rather, his opinion was overtly couched in speculative terms. In sum, this evidence falls far short of establishing that a patent would have been issued.

Plaintiffs also submitted an affidavit prepared by patent attorney Jeffrey Sadowski, the entirety of which is as follows:

> 1. I am a licensed patent attorney and have been practicing law for more than 45 years.
>
> 2. I have reviewed documents in connection with this case, and understand that Defendants argue in the pending Motion for Summary Disposition that Plaintiff cannot prove proximate causation, i.e. that if Defendants had timely filed the divisional patent application, the United States Patent and Trademark Office (USPTO) would have issued a patent on Mr. Smith's invention, including specifically method claims.
>
> 3. Based on my education, training, experience handling patent matters for several decades, and my review of materials in this case, I disagree with Defendants.
>
> 4. Specifically, I believe that if Defendants had timely filed the divisional patent application, the USPTO would have issued a patent on Mr. Smith's invention, including specifically method claims that were the subject of that divisional patent application.

This brief, four-paragraph affidavit does not provide any explanation as to how Sadowski came to his conclusion that the divisional application would have been successful if had been filed on time. See *Quinto v Cross & Peters Co*, 451 Mich 358, 372; 547 NW2d 314 (1996) (holding that an affidavit that "constituted mere conclusory allegations and was a devoid of detail" did not satisfy the plaintiff's burden as the opposing party to a motion for summary disposition under MCR 2.116(C)(10)). Therefore, the trial court did not err by concluding that plaintiffs failed to present sufficient evidence to establish a genuine issue of material fact as to whether the dispositional patent application would have been successful if it had been filed on time.

Accordingly, the legal malpractice claim must fail, and the trial court properly granted summary disposition under MCR 2.116(C)(10) in favor of defendants. See *Lowrey*, 500 Mich at 7. Nevertheless, we note that defendant's claim also fails due to the failure to establish damages.

D. DAMAGES

Plaintiffs argue that the trial court erred by concluding that they did not offer a sufficient showing to establish damages. We disagree.

"[A] claim of malpractice requires a showing of actual injury caused by the malpractice, not just a potential for injury . . . ." *Keliin v Petrucelli*, 198 Mich App 426, 430; 499 NW2d 360 (1993) (citation omitted). A plaintiff in a legal malpractice action bears the burden of proving "the fact and extent of the damage alleged." *McCluskey v Womack*, 188 Mich App 465, 473; 470 NW2d 443 (1991). "[D]amages that are speculative or based on conjecture are not recoverable. However, it is not necessary that damages be determined with mathematical certainty; rather, it is sufficient if a reasonable basis for computation exists." *Chelsea Investment Grp, LLC v City of Chelsea*, 288 Mich App 239, 255; 792 NW2d (2010) (citation omitted).

At the outset, it would be difficult for plaintiffs to establish a specific amount of damages because it is unclear whether the divisional patent application would have been successful if had been properly filed. Moreover, there is absolutely nothing in the record to establish *when* the patent would have issued if the application was successful, which would affect the calculation of plaintiffs' damages. Justin testified that the initial patent application was filed on May 18, 2012, and he received the utility patent on November 15, 2016. Therefore, it is possible that it would have been several years before the divisional patent would have been issued even if the application was filed in November 2016. Indeed, Williams testified at his deposition that one could get "very old" waiting for the USPTO to act on a computer-implemented invention.

The only evidence plaintiffs submitted regarding damages was a damages report prepared by Jeff Hauswirth, a certified public accountant. Hauswirth estimated that the total out-of-pocket monies and lost earnings suffered by Justin was $1,952,000. He further opined that the value of lost royalty fees that Justin would have received through the life of the patent was $4,432,000. Hauswirth calculated the value of lost profits suffered by plaintiffs as a direct result of McGarry Bair's error as $17,163,000. He estimated the value of the business would have been $3,707,000. Even with this damages report, Justin's claim for damages is far too speculative.

Justin took no steps toward selling or marketing the swim paddle. In fact, he testified in his deposition that he would not attempt to sell the paddle until he received the divisional patent. Justin did have a utility patent on the paddle itself, and he acknowledged that there was nothing legally preventing him from marketing or selling the paddle, or utilizing the customization process—although it does not appear that Justin made much progress developing the customization aspect of his invention. He stated during his deposition that he had not developed a website or phone application for customers to utilize the customization process. As a result, there was no evidence to establish when, or even if, Justin would have started selling his swim paddles. Moreover, it was unclear how successful he would have been selling the paddle given the availability of several different swim paddles on the market. Therefore, any alleged damages resulting from defendants' failure to timely file the divisional patent application were speculative. "[I]f the business has not had such a history as to make it possible to prove with reasonable accuracy what its profits have been in fact, the profits prevented are often but not necessarily too

uncertain for recovery." *Joerger v Gordon Food Serv*, 224 Mich App 167, 176; 568 NW2d 365 (1997) (quotation marks, citations, and ellipses omitted). Accordingly, the trial court also properly granted defendants' motion for summary disposition because plaintiffs could not establish their damages arising out of the alleged malpractice with any certainty. See *Lowrey*, 500 Mich at 7.

Affirmed.

/s/ Michael F. Gadola
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado