*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

B. A. TYLER,

Plaintiff-Appellant,

v

DAVID M. FINDLING, THE FINDLING LAW
FIRM PLC, and MEKEL S. MILLER,

Defendants-Appellees.

UNPUBLISHED
June 11, 2020

No. 348231
Oakland Circuit Court
LC No. 2018-165238-NZ

---

B. A. TYLER,

Plaintiff-Appellant,

v

DAVID M. FINDLING and THE FINDLING LAW
FIRM PLC,

Defendants-Appellees.

No. 350126
Oakland Circuit Court
LC No. 2019-172454-NZ

---

Before: LETICA, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

In Docket No. 348231, plaintiff, B. A. Tyler, in propria persona, appeals three trial court orders: one granting a motion to strike and motion in limine in favor of David M. Findling, the Findling Law Firm, PLC, and Mekel S. Miller (defendants), another, an opinion and order granting summary disposition to defendants under MCR 2.116(C)(10), and the last denying plaintiff's Motion for Leave to File First Amended Complaint. This appeal has been decided without oral argument pursuant to MCR 7.214(E). In Docket No. 348231, we affirm in part, reverse in part, vacate in part, and remand.

-1-

In Docket No. 350126, plaintiff appeals the trial court's August 7, 2019 Opinion and Order granting defendants', David M. Findling and the Findling Law Firm, PLC, motion for summary disposition under MCR 2.116(C)(8) and (10). In Docket No. 350126, we affirm.

I. BACKGROUND

At the center of this case is the plaintiff's representation of Samir Warda (Warda) in a case against Fieger, Fieger, Kenney & Harrington, PC, (the Fieger Firm) for malpractice and conversion of attorney fees. Warda allegedly suffered a brain injury as a result of his auto accident(s) and was made a protected person by the probate court and appointed his sister as his conservator. The court appointed Findling as the Receiver for Warda's Estate after Warda's sister breached her fiduciary duties as the estate's conservator. Mekel Miller (Miller), a member of the Findling Law Firm, acted as counsel for Receiver Findling as they attempted to marshall the assets of the Warda estate. Those assets included two personal injury protection (PIP) cases brought on Warda's behalf by Attorney Anna Wright[1] of the firm Atnip & Associates, PLLC. It was in their capacity as Receiver and counsel to the receiver that Findling and Miller came in contact with Wright. Miller was the first to interact with Wright. Miller testified that in investigating Warda's suit against the Fieger Firm, she spoke with Fieger attorney, Stephanie Arndt. When deposed, Miller testified that during that conversation, she shared that plaintiff had been hostile to Findling and Arndt responded that plaintiff was similarly hostile toward Fieger. Arndt suggested to Miller that there may have been a personal connection between plaintiff and Warda. Miller could not recall her conversation with Arndt verbatim, only that she was left with the impression that Warda had a criminal history and some drug use, that plaintiff was hostile and aggressive, and there was a question of whether plaintiff had a personal relationship with Warda. Miller testified that she made further inquiry into whether there was any published criminal history or disciplinary action involving plaintiff, but found none. It was from this information base that Findling spoke to Wright in May 2017.

In Docket No. 348231, Findling allegedly uttered a defamatory statement about plaintiff to Wright, in May 2017. Wright recorded the statement without Findling's knowledge and shared it with plaintiff. The statement was later transcribed as follows:

> MS. WRIGHT: Well, he [Samir Warda] may be able to make certain decisions, but he may not have the memory going back. I mean I don't know, I'm just speculating, but I am trying, I do think that I have an obligation to find out and get to the bottom of this has there been any drug related activities
>
> MR. FINDLING: Yeah.
>
> MS. WRIGHT: -- and if other attorneys are involved.
>
> MR. FINDLING: Yeah. It doesn't hurt to ask. I don't think Bob Tyler matters for this case but --

---

[1] Anna Wright is also referred to as Ania Wright in the trial court record.

MS. WRIGHT: No, I know.

MR. FINDLING: Again, you know, 'cause we kept questioning why Bob Tyler was behaving the way he was.

MS. WRIGHT: I know.

MR. FINDLING: It's just, you know, it's the way he is so obstinate and so protective of Samir in a way that was, you know, like I'm not a dick, I mean I'm good at what I do and I'm clear but I'm not – I work with people, I care about people, and he was treating me like in a way that was like somebody who's like got a personal connection with Samir.

Maybe it's just, you know, for whatever reasons or Bob may be just that way, but it was unusual to us and I think that's where Mekel had talked to somebody else and said well, you know why, you know, Bob is so strident in his behavior with Samir is that Samir's got something on him 'cause he's supplying him with stuff. That's the way she described it to me. So it comes from somebody else that I didn't even ask about. Frankly, it went in one ear and out the other 'cause it doesn't, it wasn't germane to what I was doing at the time so I didn't spend any real time verifying it or anything.

MS. WRIGHT: well, no, I mean it's, I don't really necessarily need to go into that, but I do need to find out whether Samir has a criminal history because that would not be good.

MR. FINDLING: But he didn't appear on OTIS. That doesn't mean that--

MS. WRIGHT: Yeah, that doesn't, I mean that's helpful but not always accurate, I get it.

Plaintiff first sought a retraction from Findling via a letter that described the defamatory comments but did not quote the exact words of the statement. Correspondence between Findling and plaintiff ensued. Getting no satisfaction from the correspondence, plaintiff filed suit. In the course of discovery, the contents and context of the defamatory communication between Findling and Wright became known. The defendants filed motions in limine and motions to strike regarding that communication asserting mediation confidentiality amongst other protections. The court granted that motion and the defendants subsequently filed for summary disposition. The defendants argued under MCR 2.116(C)(10), that once the court struck Wright's tapes and excluded her testimony, there was no material question of fact regarding defamation or any other pled cause of action. In an effort to avoid summary relief, the plaintiff filed a motion to amend to assert additional defamatory communications made to a different attorney from Atnip & Associates, PLLC, Heather Atnip, in August 2017. The court granted summary disposition under MCR 2.116(C)(8), finding amongst other things that the proposed amendment failed to plead the content of the defamatory communication to Atnip with specificity. Rebuffed in the effort to amend, the plaintiff filed a second suit based solely on the Atnip communication in Docket No. 350126. That suit was subject to summary relief as well for reasons to be discussed in detail later in this opinion.

## II DOCKET NO. 348231

### A. STATEMENTS TO WRIGHT

Neither plaintiff's request for retraction pre-suit nor the Complaint noted the defamatory words which were the basis of the Complaint. When Findling became aware of the context of the utterances attributed to him, he filed a motion in limine and motion to strike which the court granted. The basis of the court's decision was that the statements were made within a confidential and privileged environment under MCR 2.412. Plaintiff argues that the trial court abused its discretion in granting defendants' motion to strike Wright's affidavit and motion in limine to preclude her testimony. We agree.

### 1. STANDARD OF REVIEW

"This Court reviews for an abuse of discretion a trial court's decision to grant a motion to strike an affidavit." *Kalaj v Khan*, 295 Mich App 420, 425; 820 NW2d 223 (2012). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Barnett v Hidalgo*, 478 Mich 151, 158; 732 NW2d 472 (2007). To the extent this Court's review concerns an interpretation of MCR 2.412, our review is de novo. *Id*. at 159.

> When interpreting a court rule, we apply the same rules as when we engage in statutory interpretation. The overriding goal of judicial interpretation of a court rule is to give effect to the intent of the authors. The starting point of this endeavor is the language of the court rule. If the language of the court rule is clear and unambiguous, then no further interpretation is required or allowed. However, when reasonable minds can differ on the meaning of the language of the rule, then judicial construction is appropriate. [*Wilcoxon v Wayne Co Neighborhood Legal Services*, 252 Mich App 549, 553; 652 NW2d 851 (2002) (internal citations omitted)].

### 2. ANALYSIS

" 'Mediation' is a process in which a neutral third party facilitates communication between parties, assists in identifying issues, and helps explore solutions to promote a mutually acceptable settlement." MCR 2.411(A)(2). " 'Mediation communications' include statements whether oral or in a record, verbal or nonverbal, that occur during the mediation process or are made for purposes of retaining a mediator or for considering, initiating, preparing for, conducting, participating in, continuing, adjourning, concluding, or reconvening a mediation." MCR 2.412(B)(2). "Mediation communications are confidential. They are not subject to discovery, are not admissible in a proceeding, and may not be disclosed to anyone other than mediation participants except as provided in subrule (D)." MCR 2.412(C).

"Confidentiality is at the heart of mediation. For mediation to be effective, the parties must believe that they can express their needs and interests without repercussion if agreement is not reached." 8A Michigan Pleading & Practice (2d ed), § 62B:10. "The reasonable expectations of the parties with regard to confidentiality shall be met by the mediator." 8A Michigan Pleading & Practice (2d ed), § 62B:39. " 'Mediation party' means a person who or entity that participates in a mediation and whose agreement is necessary to resolve the dispute." MCR 2.412(B)(3). "

'Mediation participant' means a mediation party, a nonparty, an attorney for a party, or a mediator who participates in or is present at a mediation." MCR 2.412(B)(4).

The expectation of confidentiality belongs to the mediation parties. Findling attended the May 2017 mediation as a Receiver, not a mediation party. "The primary purpose of a receiver is to preserve property and to dispose of it under the order of the court." *Band v Livonia Assoc*, 176 Mich App 95, 104; 439 NW2d 285 (1989). "The duty of a receiver is not to litigate as between the adverse parties, but, under the order of the court, to preserve and care for the property and turn it over to the person who is ultimately decided to be entitled thereto." *Westgate v Westgate*, 294 Mich 88, 91; 292 NW 569 (1940). Findling was a nonparty mediation participant, not a mediation party. Findling identified the PIP action as a receivership asset and attended the mediation to be informed of the progress of the action. It was not until October 2017 that the probate court replaced Warda with Findling as first party plaintiff in the PIP case.

Findling's statements to Wright were also not mediation communications. Defendants argue that MCR 2.412(B)(2) "describes the mediation process to include: considering to mediate, the retention of the mediator, preparing for, initiating, conducting, participating in, continuing, adjourning, concluding or reconvening a mediation." MCR 2.412(B)(2) does not describe the mediation process, instead it defines confidential "mediation communications". Those communications are defined as statements "that occur during the mediation process or are made for purposes of retaining a mediator or for considering, initiating, preparing for, conducting, participating in, continuing, adjourning, concluding, or reconvening a mediation." (Emphasis added). MCR 2.411(C)(2) defines the conduct of mediation proceedings as when "[t]he mediator shall meet with counsel and the parties, explain the mediation process, and then proceed with the process." MCR 2.411(A)(2) further defines the process of mediation as when "a neutral third party facilitates communication between parties, assists in identifying issues, and helps explore solutions to promote a mutually acceptable settlement." MCR 2.411 clearly envisions the mediation process beginning when the mediator meets with the parties. The facts, as presented, place Findling's statements outside the mediation process. Sitting in a room designated for plaintiff neither made him the party plaintiff nor did his presence in that room start the mediation.

Still, the latter half of the rule provides that mediation communications may also be statements "made for purposes of retaining a mediator or for considering, initiating, preparing for, conducting, participating in, continuing, adjourning, concluding, or reconvening a mediation." MCR 2.412(B)(2). Besides an assertion that Findling's statements were mediation communications, defendants failed to analyze how the statements fit under the rule. Below, defendants argued, "Findling made inquiries of Wright during the mediation proceedings related to the receivership proceedings" and on appeal, that "Wright questions Findling, and he answers". A plain reading of MCR 2.412(B)(2) and the recorded conversation between Findling and Wright excludes Findling's statements from the protections of the mediation rule. The recording began with Wright stating that she believed she had an obligation to find out whether Warda was involved in any drug related activities and if other attorneys were involved. Findling raised the issue of plaintiff's behavior while representing Warda. Wright acknowledged the behavior, but said it was unnecessary for her to "go into that", and reemphasized the need to find out whether Warda had a criminal history. Their conversation was not for the purposes of retaining a mediator, or for considering, initiating, continuing, adjourning, concluding, or reconvening a mediation. Neither were Wright and Findling discussing Warda's possible involvement in drug related activities to

-5-

prepare for, participate in, or conduct the mediation. Wright and Findling were not going to learn from the mediation whether Warda was involved in drug related activities. Instead, the purpose of the discussion was related to future discovery that needed to be done in the PIP action, and not the mediation.

Findling's arguments in the trial court also implicated attorney-client privilege. "The attorney-client privilege attaches to communications made by a client to an attorney acting as a legal adviser and made for the purpose of obtaining legal advice." *Herald Co, Inc v Ann Arbor Pub Sch*, 224 Mich App 266, 279; 568 NW2d 411 (1997). "The attorney-client privilege is designed to permit a client to confide in his attorney, knowing that his communications are safe from disclosure." *McCartney v Attorney General*, 231 Mich App 722, 730; 587 NW2d 824 (1998). "The scope of the privilege is narrow: it attaches only to confidential communications by the client to its advisor that are made for the purpose of obtaining legal advice." *Herald Co*, 224 Mich App at 279. Wright's affidavit and testimony were not otherwise inadmissible as privileged attorney-client communications. The order appointing Findling as Receiver granted Findling the ordinary powers under MCL 600.5201 *et seq*. to identify and harness the assets of the estate so as to carry out the probate court's orders. His appointment as Receiver did not establish an attorney-client relationship between him and Wright. Again, the order making Findling the real party in interest in the PIP case did not issue until October 2017 which was well after the May 2017 statements. Once Findling was substituted as the real party in interest, he had authority to initiate a suit in his own name and to select counsel. *Stephenson v Golden*, 279 Mich 710, 762; 276 NW 849 (1937); MCR 2.622(E)(1). After his substitution, on December 14, 2017, Findling sent Wright's employer, Atnip & Associates, PLLC, an e-mail stating, "I have not retained you and you are not my attorney." There is no evidence to support defendants' position that Findling's statements to Wright were protected from disclosure by the attorney-client privilege.

Accordingly, we conclude that the trial court abused its discretion in granting defendants' motion to strike Wright's affidavit and motion in limine to preclude her testimony based on a finding that Findling's statements to Wright were confidential and inadmissible mediation communications. The order striking Wright's affidavit and ordering her testimony inadmissible evidence is thereby vacated.

## B. SUMMARY DISPOSITION

Plaintiff additionally argues that the trial court erred in granting summary disposition to defendants under MCR 2.116(C)(10). We agree.

## 1. STANDARD OF REVIEW

We review de novo a trial court's decision to grant summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court granted defendants' motion for summary disposition as to plaintiff's first Complaint under MCR 2.116(C)(10).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to

the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Id*. at 120].

## 2. ANALYSIS

Plaintiff's first Complaint alleged Findling uttered defamatory statements about plaintiff to Wright. Defendants filed a motion for summary disposition under MCR 2.116(C)(7), (8) and (10), and later, a motion to strike and motion in limine to preclude Wright's affidavit and testimony. The court granted defendants' motion to strike and motion in limine, and then ordered plaintiff to file an amended response to defendants' motion for summary disposition that did not include the allegations involving Wright. Plaintiff's amended response raised a new claim of defamation involving alleged statements Findling made to Atnip, and included an affidavit requesting additional time to permit discovery of the Atnip allegations under MCR 2.116(H). At oral argument, plaintiff admitted that without Wright's affidavit or testimony, he had no evidence to support the initial defamation allegations. The court granted summary disposition under subsection (C)(10) because there was no support for the claims in plaintiff's Complaint. The court held that the affidavit was insufficient to avoid summary disposition because while it may have constituted a separate and distinct claim against Findling regarding statements made to Atnip, the affidavit still did not include any representations by Atnip that supported the original Complaint allegations involving Wright.

Given this Court's conclusion that the trial court abused its discretion in granting defendants' motion to strike and motion in limine, we reverse the trial court's grant of summary disposition to defendants under MCR 2.116(C)(10) and remand the matter for the trial court to consider Wright's affidavit and testimony.

## C. MOTION TO AMEND THE COMPLAINT

Plaintiff next argues that the trial court erred in denying his motion to amend the first Complaint to add allegations that Findling made defamatory statements about plaintiff to Attorney Heather Atnip. We disagree.

## 1. STANDARD OF REVIEW

We review a trial court's decision to deny a motion to amend a complaint to determine whether the trial court abused its discretion. *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Barnett*, 478 Mich at 158. A trial court's decision on whether to permit a party to serve a supplemental pleading is also discretionary. MCR 2.118(E). "The question whether a proposed amendment relates back to the original complaint represents an issue of law that is reviewed by this Court de novo on appeal." *Doyle v Hutzel Hosp*, 241 Mich App 206, 212; 615 NW2d 759 (2000). The application of the statute of limitations is also an issue of law which we review de novo. *Michigan Employment Sec Com'n v Westphal*, 214 Mich App 261, 263; 542 NW2d 360 (1995).

## 2. ANALYSIS

If a court grants summary disposition under MCR 2.116(C)(8), (9), or (10), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I)(5). "Leave shall be freely given when justice so requires." MCR 2.118(A)(2). "Leave to amend should be denied only for particularized reasons, such as undue delay, bad faith or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party, or where amendment would be futile." *Miller v Chapman Contracting*, 477 Mich 102, 105; 730 NW2d 462 (2007).

In his February 5, 2019 Motion for Leave to File First Amended Complaint, plaintiff argued that he learned in the fall of 2018 that defendants, Findling and the Findling Law Firm, PLC, also made defamatory statements about plaintiff to Attorney Heather Atnip in or about August 2017. Plaintiff "expected that the evidence of Defendants' utterance of defamation and specifics thereof, similar [to] that stated by Findling to Ania Wright, will be provided by Ms. Atnip at her soon to be scheduled deposition." Plaintiff asserted that he had not been able to obtain Atnip's affidavit because of an investigation with the Attorney Grievance Commission, nor Atnip's deposition because defendants filed a motion in opposition. He argued that, "assuming that Ms. Atnip testifies as anticipated by Plaintiff, the amendment would be justified." The motion did not include a proposed amended complaint.

Plaintiff's motion to amend failed to identify the exact language alleged to be defamatory. "[A] plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory." *Ghanam v Does*, 303 Mich App 522, 543; 845 NW2d 128 (2014) (quotation marks and citation omitted). Unlike the first Complaint, which generally classified the alleged defamatory statements as accusing plaintiff of having been involved in illegal activity, the motion to amend is devoid of **any** information concerning what was said. Further, "amendments must be submitted in writing" and plaintiff failed to include a proposed amended Complaint with his motion. *Anton, Sowerby & Assoc, Inc v Mr C'S Lake Orion, LLC*, 309 Mich App 535, 551; 872 NW2d 699 (2015) citing MCR 2.118(A)(4). "If a plaintiff does not present its proposed amended complaint to the court, there is no way to determine whether an amendment is justified." *Id*. "Absent the submission of the proposed complaint in writing or a clear statement of plaintiff's claim, we discern no abuse of the circuit court's discretion." *Id*. at 551-552.

There were also grounds to deny leave to amend for undue delay, undue prejudice, and futility. Undue delay does not require the denial of a motion to amend without a showing of prejudice. *Traver Lakes Cmty Maint Ass'n v Douglas Co*, 224 Mich App 335, 343; 568 NW2d 847 (1997). Plaintiff asserted he learned of the alleged statements to Atnip in the fall of 2018. According to the court's July 2018 scheduling order, discovery was to be completed by November 29, 2018. Plaintiff learned at the end of October that Wright's testimony would be inadmissible. Plaintiff however did not notice Atnip's deposition until after the close of discovery on December 19, 2018, and filed the motion to amend even later, in February 2019. It was unduly prejudicial for plaintiff to file the motion for leave approximately two months after the close of discovery and approximately 45 days before the scheduled trial date of March 18, 2019. Cf. *Traver Lakes Cmty Maint Ass'n v Douglas Co*, 224 Mich App at 344.

"An amendment is futile where, ignoring the substantive merits of the claim, it is legally insufficient on its face." *Gonyea v Motor Parts Fed Credit Union*, 192 Mich App 74, 78; 480 NW2d 297 (1991). Plaintiff's amendment would have been futile again, because it failed to allege a specific statement of defamation. The amendment would also have been futile because it proposed to add a new claim of defamation to the first Complaint that did not relate back to the original pleading. "An amendment that adds a claim or a defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading." MCR. 2.118(D). The original pleading involved a claim that Findling made defamatory statements about plaintiff to Wright in May 2017 that plaintiff was possibly involved in criminal or drug activity with a client. In contrast, the amended pleading involved a claim that Findling made defamatory statements about plaintiff of an unknown nature to Atnip sometime after May 2017. Outside of the two claims involving defamation, none of the other factors in MCR 2.118(D) are present.

The amendment would lastly have been futile because the Atnip claim was time-barred at the time of plaintiff's motion for leave to amend. According to plaintiff, the alleged defamatory statements occurred sometime in August 2017, although plaintiff did not learn that something was said until August 2018. "A defamation claim has a one-year statute of limitations period under MCL 600.5805(1) and (9)." *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005). Further, a defamation claim accrues when "the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827. By plaintiff's own account, the Atnip claim accrued in August 2017 and was therefore, time barred in February 2019 when plaintiff sought to amend his pleading. In his defense, plaintiff argues that defendants attempted to conceal the statements made to Atnip by filing an attorney grievance against Atnip, asserting an attorney client privilege, and contesting the taking of her deposition. MCL 600.5855 provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

The claimed actions of concealment did not prevent plaintiff from discovering the existence of Atnip's claim because defendants' actions occurred after plaintiff learned of the alleged statements. Since there is no other applicable authority to toll the statute of limitations for the Atnip defamation claim, it would have been futile to grant the amendment to add the claim to the original action.

The trial court properly identified plaintiff's motion to amend as a supplemental pleading. Under MCR 2.118(E), a supplemental pleading is one that "state[s] transactions or events that have happened since the date of the pleading sought to be supplemented, whether or not the original pleading is defective in its statement of a claim for relief or a defense." Plaintiff sought to add a new claim of defamation involving Atnip that occurred after the alleged defamatory incident with Wright and that did not relate back to the allegations in the original pleading involving Wright. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 203-205; 920 NW2d

148, 161 (2018), app den 504 Mich 987; 934 NW2d 45 (2019). However, the claim involving Atnip was barred by the statute of limitations for defamation claims. MCL 600.5827. Therefore, the court did not err in denying plaintiff's motion to amend.

Lastly, plaintiff appears to argue that if his defamation claims fail, his intentional infliction of emotional distress (IIED) claim is still viable and is not barred by the statute of limitations. The trial court did not address plaintiff's IIED claim individually, but rather dismissed plaintiff's first Complaint in its entirety based on an analysis of the defamation claim under MCR 2.116(C)(10). We decline to address this issue in the first instance and direct the trial court to address it on remand.

## III. DOCKET NO. 350126

In Docket No. 350126, plaintiff argues that the trial court erred in granting summary disposition under MCR 2.116(C)(8) because the lack of specificity in the complaint was attributable to defendants' conduct, and under (C)(10), because discovery was incomplete. We disagree with both contentions

### A. STANDARD OF REVIEW

We review de novo a trial court's decision to grant summary disposition. *Maiden*, 461 Mich at 118. In Docket No. 350126, the trial court granted defendants' motion for summary disposition as to plaintiff's second Complaint under MCR 2.116(C)(8) and (10).

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. *Wade v. Dep't of Corrections*, 439 Mich. 158, 162, 483 N.W.2d 26 (1992). A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. at 163, 483 N.W.2d 26. When deciding a motion brought under this section, a court considers only the pleadings. MCR 2.116(G)(5).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden*, 461 Mich at 119-120].

### B. ANALYSIS

Plaintiff first contends that the court erred in dismissing the defamation claim under (C)(8) for lack of specificity because defendants' false claim of attorney client privilege prevented him from learning the defamatory statements made to Atnip. We disagree.

To prove a claim of defamation, plaintiff must show the following:

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. [*Lakin v Rund*, 318 Mich App 127, 133; 896 NW2d 76 (2016) (quotation marks and internal citation omitted).]

"[A] plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory." *Ghanam*, 303 Mich App at 543. "Michigan law requires a plaintiff to specifically identify every statement that he or she claims is capable of defamatory meaning." *Sarkar v Doe*, 318 Mich App 156, 185 n 15; 897 NW2d 207 (2016). See *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 266; 833 NW2d 331 (2013) ("[U]nder Michigan law, the plaintiff must allege the exact defamatory statements.").

"[F]acially deficient claims cannot survive a motion for summary disposition under MCR 2.116(C)(8)." *Sarkar v Doe*, 318 Mich App 156, 179; 897 NW2d 207 (2016). "A motion for summary disposition brought under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone." *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Maiden*, 461 Mich at 119. "The motion should be granted if no factual development could possibly justify recovery." *Beaudrie*, 465 Mich at 130.

In plaintiff's second Complaint, he alleged:

5. That previously, on or about May 3, 2017, Defendant David M. Finding on behalf of himself and as the employee and/or agent of The Findling Law Firm, PLC (Findling) uttered and published defamatory statements to Ania Wright indicating that Plaintiff was involved in some type of illicit and illegal activity involving drugs or otherwise - all of which was untrue.

* * *

8. That during the course of the underlying case, after the October 31, 2018 hearing, Plaintiff was informed in a general manner that Findling had repeated the untrue allegations against Tyler to Heather Atnip.

Viewing the allegations in a light most favorable to the plaintiff and accepting them as true, plaintiff's defamation claim is facially deficient for failure to identify the exact statements alleged to be defamatory or the dates on which it was made. In response to defendants' motion for summary disposition, plaintiff admitted that he was without an affidavit or deposition from Atnip. On appeal, plaintiff further admits that the exact language of the defamatory statements, as well as the date they were uttered were never disclosed to plaintiff. Thus, the court did not err in finding that plaintiff's second Complaint failed to state claim of defamation.

However, plaintiff blames the lack of specific language in the Complaint on defendants' concealment of the defamation claim. Under MCL 600.5855, "there must be concealment by the defendant of the existence of a claim or the identity of a potential defendant." *McCluskey v Womack*, 188 Mich App 465, 472; 470 NW2d 443 (1991). "Fraudulent concealment means

employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action." *Doe v Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich App 632, 642; 692 NW2d 398 (2004) (quotation marks and citation omitted). "For the fraudulent-concealment exception to apply, a plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment and prove that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery." *Mays v Snyder*, 323 Mich App 1, 39; 916 NW2d 227 (2018) (quotation marks and citations omitted).

In his second Complaint, plaintiff alleged:

10. The concealment included the filing of a Request for Investigation with the Attorney Grievance Commission as to attorneys Heather Atnip and Ania Wright, the filing of motions and/or responses to preclude the testimony of Heather Atnip and correspondence directed toward Ms. Atnip.

Plaintiff's generalized allegations of "filing motions and/or responses" and "correspondence directed toward Ms. Atnip" fail to plead fraudulent concealment with sufficient specificity. *Doe*, 264 Mich App at 643. These allegations rather amount to the type of conduct defendants would have been required to undertake in establishing their underlying defense. *McCluskey*, 188 Mich App at 472. Plaintiff otherwise fails to point to any misrepresentation made by defendants in taking the above actions or any support that would evade summary disposition of his claim under (C)(8).

Plaintiff next contends the trial court erred in summarily dismissing his IIED claim under (C)(8). We find that plaintiff has abandoned this claim on appeal where he sets forth the applicable law, but gives no analysis to the facts of his case. "Insufficiently briefed issues are deemed abandoned on appeal." *Greater Bethesda Healing Springs Ministry v Evangel Builders & Const Managers, LLC*, 282 Mich App 410, 413; 766 NW2d 874 (2009). Even had we not found this claim abandoned, plaintiff failed to allege a harm particular to the IIED claim. See *Campos v Oldsmobile Div, Gen Motors Corp*, 71 Mich App 23, 26; 246 NW2d 352 (1976) ("Only those allegations which charge an intentional interference with plaintiff's own mental well-being, as distinguished from other's reactions to the charges, are not barred by the one-year statute of limitations of M.C.L.A. s 600.5805(6)."). Because plaintiff did not plead an injury separate from that associated with the defamation claim, plaintiff's complaint was really one of defamation, not IIED. The IIED claim was therefore derivative of the defamation claim which was properly dismissed under (C)(8), and as discussed below, under (C)(10).

Plaintiff lastly contends the court erred in dismissing his defamation claim under MCR 2.116(C)(10) because discovery was incomplete. "A motion under MCR 2.116(C)(10) is generally premature if discovery has not been completed unless there is no fair likelihood that further discovery will yield support for the nonmoving party's position." *Liparoto Const, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 33-34; 772 NW2d 801 (2009). "If a party opposes a motion for summary disposition on the ground that discovery is incomplete, the party must at least assert that a dispute does indeed exist and support that allegation by some independent evidence." *Bellows v Delaware McDonald's Corp*, 206 Mich App 555, 561; 522 NW2d 707 (1994). "The party opposing summary disposition must offer the required MCR 2.116(H) affidavits, with the probable

testimony to support its contentions." *Marilyn Froling Revocable Living Tr v Bloomfield Hills Country Club*, 283 Mich App 264, 292-293; 769 NW2d 234 (2009).

Plaintiff argues that he should have been allowed to conduct further discovery to obtain Atnip's testimony and that the court should have ordered her deposition. We disagree. Even had the court granted further discovery, there was no fair likelihood that plaintiff would uncover factual support for his claim of defamation. Plaintiff presupposes that the attorney-client privilege was the only barrier to Atnip providing an affidavit or deposition without considering Atnip's pending investigation with the Attorney Grievance Commission. Plus, plaintiff's history of unsuccessful attempts to procure Atnip's testimony negated the possibility that plaintiff would be more successful with more time. Additionally, plaintiff had not submitted any independent evidence to create a genuine issue of material fact. Plaintiff offered an MCR 2.116(H) affidavit in Docket No. 348231, when he sought to amend his claim with Atnip's testimony, but did not submit nor reference the same affidavit in this Docket No. 350126 where the viability of the entire Complaint rested on Atnip's testimony. Further, despite representing in Docket No. 348231, that he believed the defamatory statements were made to Atnip in or about October 2017, plaintiff now on appeal argues that the "exact and specific language, as well as the dates were never disclosed to [him]." Last, plaintiff's defamation claim moves further and further away from the statutory of limitations period and without a viable claim of fraudulent concealment, there is no tolling. On this point, there has been no showing how more discovery could produce evidence in avoidance of the statute of limitations defense. Summary disposition under MCR 2.116(C)(10) before the completion of discovery was appropriate given these circumstances.

## IV. CONCLUSION

In Docket No. 348231, we vacate the trial court's order granting defendants' motion to strike Wright's affidavit and finding her testimony inadmissible. We reverse the trial court's order granting summary disposition to defendants under MCR 2.116(C)(10). We remand for further proceedings. We do not retain jurisdiction. We affirm the trial court's order denying plaintiff's motion for leave to amend the first Complaint.

In Docket No. 350126, we affirm the trial court's grant of summary disposition to defendants under MCR 2.116(C)(8) and (10).

/s/ Anica Letica
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien

-13-